UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DIGERONIMO AGGREGATES, LLC** ) | |
| ) | **Case No. 1:13-CV-1208** |
| **Plaintiff,** ) | |
| ) | **Judge Dan Aaron Polster** |
| **v.** ) | |
| ) | **MEMORANDUM OF OPINION AND** |
| **MICHAEL H. ZEMLA, et al.** ) | **ORDER** |
| ) | |
| **Defendants.** ) | |

Before the Court is Defendants Michael H. Zemla, Jack W. Sideris, Nick C. Sideris, Thomass Tyrell, Steven M. Eisenberg, Kevin Schroeder and James G. Stiegel's (collectively referred to herein as "Trustees") Motion to Dismiss Plaintiff Digeronimo Aggregates, LLC's ("DGA") Complaint ("Motion") (Doc. # 10). The Court has reviewed the Motion and memorandum in support, Plaintiff's memorandum in opposition to the Motion (Doc. # 12), and the Defendants' reply in support of their Motion (Doc. # 13). Trustees seek to dismiss, with prejudice, DGA's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. In the alternative, Trustees ask the Court to stay this case pending the determination of the appeal by the United States Court of Appeals for the Sixth Circuit in *Knall Beverage, Inc., et al. v. Teamsters Local Union No. 293 Pension Plan, et al.,* Case No. 13-13698. For the following reasons, the Trustees' Motion to Dismiss is GRANTED.

**I.  Background**

The Defendants are trustees of the Teamsters Local Union No. 293 Pension Plan ("Pension Plan"). The Pension Plan is governed by the Employee Retirement Income Security

Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. The Pension Plan is an "employee pension benefit plain" within the meaning of ERISA, 29 U.S. C. § 1002(2) and a "multiemployer plan" within the meaning of ERISA, 29 U.S.C. § 1301(a)(3).

The parties in this case are also parties in another case involving the Pension Plan, *Knall Beverage, Inc., et al. v. Teamsters Local Union No. 293 Pension Plan, et al.*, Case No. 1:12-cv-3125-DAP (the "Knall Action"). The Knall Action concerned the Pension Plan's Board of Trustees' decision to terminate the fund, which was initiated by a mass withdrawal of substantially all of the Pension Plan's remaining contributing employers, including DGA. Before the Board of Trustees terminated the Plan, the three plaintiffs in the Knall Action, Knall Beverage, Inc., HDT Tactical Systems, Inc. and Beverage Distributor, Inc., withdrew from the Plan. The plaintiffs in the Knall Action alleged that the entire mass-withdrawal was a sham – a scheme to evade or avoid ERISA liability – and therefore null and void. The Pension Plan, the Trustees and each of the remaining contributing employers, including DGA, are defendants in the Knall Action.

On January 28, 2013, DGA filed a cross-claim against the Trustees under Section 4301(a) of ERISA, alleging that the Trustees acted negligently in negotiating contribution rates on behalf of the Pension Plan and in managing the Pension Plan's assets. (Knall Action, Doc. # 33). On May 6, 2013, this Court issued an order dismissing the Knall Action in favor of sending the parties back to arbitration, which they had started but not finished.[1] (Knall Action, Doc. # 85) The Court's order had the effect of dismissing DGA's cross-claim against the Trustees, though DGA was not a party to the pending arbitrations. On May 9, 2013, the Court issued an order

---

[1] The Court's order dismissing the Knall Action is currently on appeal in the United States Court of the Appeals for the Sixth Circuit. (Case No. 13-13698).

clarifying its May 6, 2013 order. (Knall Action, Doc. # 87). In the May 9 order, the Court held that it dismissed DGA's cross-claim because it was "wholly unrelated" to the main case, and that DGA was "not barred from reasserting its cross-claim in a separate lawsuit." Id.

On May 30, 2013, DGA refiled suit against the Trustees, once again alleging that the Trustees acted unreasonably in ratifying insufficient contribution rates and managing the Pension Plan's assets. DGA argues that as a result of the Trustees' unreasonable actions, the Pension Plan was unfunded, which increased DGA's withdrawal liability to $1, 755,773. DGA alleges that it is entitled to relief pursuant to Section 4301(a)(1) of ERISA. The Trustees argue that DGA's complaint fails to state a viable claim for relief because Section 4301(a)(1) of ERISA, 29 U.S.C. § 1451(a), confers no substantive rights upon which DGA can recover. Under a subheading titled "Persons entitled to maintain actions," 29 USC § 1451(a) provides that "[a] plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to multiemployer plan… may bring an action for appropriate legal or equitable relief, or both." The Trustees assert that this section merely sets forth what type of parties can pursue a civil action to enforce the sections governing multiemployer plans.

In its memorandum in opposition to the Motion, DGA acknowledges that § 1451(a) is merely a standing provision and does not itself provide a legal basis for an ERISA cause of action. Therefore, the essence of the parties' disagreement is the substantive basis for DGA's allegation that the Trustees were negligent in managing the Pension Plan's assets. According to the Trustees, because § 1451(a) allows an employer who is adversely affected by the act of any

party "under this subtitle" to sue, 29 USC §§ 1381-1453[2] must provide the substantive basis for DGA's claim, and the statute does not do so.  DGA contends that the Court can look to federal common law to provide the substantive basis for its claim that the Trustees acted negligently in handling the Pension Plan's assets.

## II.     Standard of Review

A 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

## III.    Law and Analysis

While the Sixth Circuit has recognized that courts could create and use federal common law under ERISA, the circumstances for doing so are very limited. *Central States, Southeast and Southwest Areas Pension Fund v. Mahoning National Bank*, 112 F.3d 252, 256 (6th Cir. 1997) (noting that "The United States Supreme Court has made clear that 'federal common law' is an 'unusual exercise of lawmaking' which should be indulged only in a 'few restricted instances.'")(citation omitted).  The Sixth Circuit has held that that courts could create or use federal common law under ERISA in instances in which 1.) ERISA is silent or ambiguous, 2.) there is an awkward gap in the statutory scheme or where 3.) federal common law is essential to the promotion of fundamental ERISA policies.  *Local 6-0682 Intern. Union of Paper Indus.*

---

[2] Sections 1381-1453  are part of Subtitle E, which is the subtitle that governs multiemployer plans.

*Group v. National Indus. Group*, 342 F.3d 606, 609 (6th Cir. 2003) (citations omitted).

DGA argues that the Court should recognize an ERISA federal common law negligence claim because there is an "awkward gap in the statutory scheme." According to DGA, granting the Trustees complete immunity with respect to their alleged tortious mismanagement of the Pension Plan's assets cannot be the result Congress intended when it adopted the Multiemployer Pension Plan and Amendment Act of 1980 ("MPAA"), and, therefore, there is an "awkward gap in the statutory scheme." DGA contends that as a result of this "awkward gap in statutory scheme," the Court's recognition of the right of employers to bring a federal common law negligence claim is "essential to the promotion of a fundamental policy."

The Court disagrees. The Sixth Circuit has not recognized a federal common law cause of action by employers against trustees for negligence, and this Court declines to create one. First, ERISA allows plan beneficiaries and participants to recover for trustees' negligence in administering a plan governed by ERISA. *See* 29 U.S.C. § 1104; *Pfeil v. State Street Bank and Trust Co.* 671 F.3d 585, 590-91 (6th Cir. 2012) (explaining the fiduciary duties that trustees owe to plan beneficiaries and participants). Therefore, the statute is not silent on this issue; rather, it provides plan beneficiaries or participants, as opposed to contributing employers, with such a remedy. *See Local 6-0682 Int'l. Union of Paper v. Nat'l Indus. Group Pension plan*, 342 F.3d 606, 609-10 (6th Cir. 2003) (holding that although ERISA does not provide a cause of action for a third-party administrator's misleading or inaccurate disclosures, it is not silent on this issue; it allows a plan beneficiary to recover when a fiduciary makes misleading or inaccurate disclosures) (citations omitted).

Second, the MPAA's general purpose is wholly unrelated to how trustees manage and

administer plan's assets.  Therefore, the Court's refusal to recognize a federal common law cause of action by contributing employers against trustees for negligence does not create an "awkward gap" in ERISA's statutory scheme.  *See Jenkins v. Montgomery Industries, Inc.* 77 F.3d 740, 743 (4th Cir. 1996) (ruling that Courts, in creating federal common law to fill in a gap created by ERISA, should only do so "when necessary to effectuate the purposes of ERISA") (citations and internal quotation omitted); *see also Teamsters Pension Trust Fund of Philadelphia & Vicinity v. Littlejohn,* 155 F.3d 206, 208-209 (3rd Cir. 1998) (recognizing that while it is " well settled that Congress intended that the federal courts would fill in" gaps created by ERISA, "the federal common law must be developed with ERISA's policy goals in mind.") (citing 29 U.S.C. § 1001(b), ERISA's declaration of policies) (other citations omitted).

    As the Trustees point out in their Reply in support of their Motion, in enacting the MPAA,  Congress intended to protect plan beneficiaries by providing contributing employers with an incentive to remain in financially shaky plans rather than immediately withdrawing from such plans.  Prior to the MPAA, ERISA's statutory scheme "encouraged an employer to withdraw from a financially shaky plan and risk paying its share if the plan later became insolvent, rather than to remain and (if others withdrew) risk having to bear alone the entire cost of keeping the shaky plan afloat.  Consequently, a plan's financial troubles could trigger a stampede for the exit doors, thereby ensuring the plan's demise."  *Milwauke Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.,* 513 U.S. 414, 416-17(1995) (citations omitted). MPAA helped solve this problem by "impos[ing] a withdrawal charge on all employers withdrawing from an underfunded plan (whether or not the plan later became insolvent)."  *Id.*

Finally, DGA has not identified a fundamental ERISA policy that would benefit from the Court's recognition of a federal common law negligence claim in this case. "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Pfeil v. State Street B and Trust Co.* 671 F.3d 585, 590-91 (6th Circ. 2012) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90 (1983); *see also* 29 ERISA U.S.C. §1001(b) "Congressional findings and declaration of  policy" ("It is hereby declared to be the policy of this chapter to protect ... the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans...")  The "Congressional findings and declaration of policy" clearly establishes that at its core ERISA is concerned with guaranteeing that participants and beneficiaries obtain the benefits to which they are entitled. Recognizing a federal common law negligence claim in this case, which would thereby allow contributing employees to recover for a trustee's negligence in handling a pension plan assets, does not promote or aid this policy.

In support of its argument that this Court should recognize a federal common law negligence claim, DGA cites to a 1988 Third Circuit case, *Colteryahn Dairy v. Western Pennsylvania Teamsters and Employers Pension Fund*, 847 F.2d 113, 120 (3rd Cir. 1988).  In *Colteryahn*, the plaintiff, a contributing employer to a pension fund, brought an action against a pension fund alleging that the fund fraudulently induced it to accede  to and approve a merger by misrepresenting the financial status of the fund at the time of the merger.  The plaintiff objected to the fund's withdrawal liability assessment amount, because, according to the plaintiff, the amount

actually represented the fund's unfunded liabilities, which the fund had concealed from the plaintiff. The court held that "under the federal common law of pension plans, [the plaintiff], as a defrauded employer, may sue in federal court for the return of any withdrawal liability sums that were assessed as a result of a fraudulent inducement to join the [f]und." *Id. at 122.*

The Court's ruling in *Colteryahn Dairy* allows a contributing employer to recover for a pension fund's fraud. Here, DGA wants the Court to create a common law claim of negligence, which, as the Trustees correctly argue, is a back-door way of imposing fiduciary responsibilities on trustees vis-a-vis employers. *See* Doc. #1 at ¶¶ 12, 14, 16, 25. For instance, DGA alleges that the Trustees had a duty "to ensure that the rates they ratified were actuarially sufficient to fund the benefits owed under the Pension Plan" and "to act reasonably in managing the Pension Plan assets, since investment gains and losses directly impact the Pension Plan's funding level." *Id.* at ¶¶ 12, 16. These allegations, if true, may have had the effect of increasing the amount of DGA's withdrawal liability. Nevertheless, these are fiduciary duties that the Trustees owed to the Pension Plan's beneficiaries and participants, not to DGA. *See* 29 U.S.C. § 1104(a)(1)(A).

## IV.     Conclusion

For the foregoing reasons, the Court **GRANTS** the Trustees' Motion to Dismiss, with prejudice, DGA's complaint. Accordingly, the Court hereby **DISMISSES** DGA's complaint with prejudice.

                **IT IS SO ORDERED.**

<u>*/s/Dan Aaron Polster 10/24/13*</u>
**Dan Aaron Polster**
**United States District Judge**